UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| VINCENT GILLESPIE, <br> AND DOES 1-100 <br><br> vs. <br><br> ELI LILLY AND COMPANY | CASE NO. 3:03-cv-30196-MAP |

**PLAINTIFF'S OPPOSITION TO MOTION FOR**
**JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS COMPLAINT**

Plaintiff Vincent Gillespie hereby opposes the Defendant's Motion for Judgment on the Pleadings and Motion to Dismiss ("Motion to Dismiss"). In support thereof he states the following:

**1) Defendant asserts that Eli Lilly was not served with a summons.**

It is true that I did not serve the defendant with a summons. However, I was acting in pro per and I did not know I was required to serve one. Furthermore, I specifically discussed the issue of proper service and proper procedure in filing my complaint with Hampshire County Superior Court clerk Megan Greygorcewicz and I served Eli Lilly in full compliance with her instructions. (See Exhibit A, Affidavit of Vincent Gillespie in Opposition to Motion to Dismiss Complaint Against Eli Lilly.)

On page 3 of Defendant's Motion to Dismiss they assert that they indicated in their answer to the compliant that no summons had been served and that Plaintiff still failed to rectify the situation. In response I assert that after I read this I assumed and believed that since the 90 day period had already elapsed it was too late to file a summons. (See Exhibit A, Affidavit of Vincent Gillespie in Opposition to Motion to Dismiss Complaint Against Eli Lilly.)

Furthermore, attached to the complaint which was served on Eli Lilly was a cover letter which contained many of the elements required to be in a summons, as described in Mass. R. Civ. P. § 4(b). The cover letter states: "I am hereby serving you with the enclosed legal action on account of the death of my father by suicide. He was taking Prozac at the time. The complaint gives more details." (See Exhibit B, Cover Letter.) Thus the cover letter could be said to have incorporated by reference the complaint it was attached to ("The complaint gives more details."). By examining both the cover letter and the complaint we can see that many of the elements of a summons, as required by Mass. R. Civ. P. § 4(b), were actually provided and served upon defendant Eli Lilly, including the following:
- The name of the court;
- The names of the parties;
- The plaintiff's address;

1

- Also, the cover letter was directed to the defendant, as required of a summons in Mass. R. Civ. P. § 4(b).

In summary, Eli Lilly was provided with all the pertinent information which their very experienced law firm needed to fully respond to the complaint.

In a similar vein, the court should consider that while a summons is required, this particular case is one in which it is apparent that no real harm was done through the absence of a summons. The purpose of a summons is to fully alert the defendant that a legal action has been filed against them. In this case the defendant is Eli Lilly, a huge corporation with its own legal department which has already fought many, many legal actions pertaining to the exact same issues as those raised in the instant case. They signed for and received the complaint and the cover letter and surely the lawyers at Eli Lilly understood exactly what was going on, that they were being sued because of a suicide which occurred on account of problems with their product.

The court should understand that no disrespect whatsoever is or was intended by the plaintiff to the court nor the legal process by the omission of a proper summons. The omission, as stated above, was due to lack of knowledge of the proper procedures and reliance upon the faulty advice of a Superior Court clerk by a pro per plaintiff. Also, the explanation, above, that many of the elements of a summons were included in the cover letter is not intended to minimize the importance of a summons but only to show that enough information was provided to enable Eli Lilly to respond.

**2) The crux of the defendant's arguments regarding counts 1, 2 and 5 (aside from the issue of the summons, which relates to the entire motion) relate to the issue of the Plaintiff's standing to bring this legal action. They assert that Mass. Gen. Laws Ann. Ch 229, § 2 holds that only the executor or administrator of an estate can bring a lawsuit for wrongful death and certain other related causes of action.**

In response the plaintiff asserts the following: "There is authority for the proposition that on the failure of an executor or administrator to perform his duty as the proper party to bring or prosecute an action under the death statute, the beneficiary may institute the action to recover damages for the death." (22A Am.Jur.2d §403). In <u>Cudney v. United Power & Light Corporation</u>, 51 P.2d 28, one E. W. Cudney was electrocuted and died and he left a widow and several children. The administrator of the estate failed to bring suit for wrongful death and then the estate was fully settled in the probate court and the administrator was discharged prior to the end of the statute of limitations to bring suit for wrongful death. The court in that case ruled that the widow could bring the suit (<u>Id.</u> at 32). They referenced two laws which urged liberal construction to help promote the object of the law in one case and to promote justice in the second case (<u>Id.</u> at 31). In the instant case to not allow the plaintiff to bring suit when the executrix is unwilling to do so would thwart the interest of justice by preventing a legitimate claim from going forward due to a technicality.

Furthermore M.G.L. 230 § 5 holds that regarding the enforcement of a claim in favor of an estate, if an executor "...refuses to bring such action at the request of an heir, legatee or creditor, or is unable to do so by reason of his interest or otherwise ... an heir, legatee or creditor having an interest in the enforcement of any such claim may bring a civil action to enforce it ..." I inquired into the executrix's willingness to pursue this legal action and found that she was unwilling to do so. (See Exhibit A, Affidavit of Vincent Gillespie in Opposition to Motion to Dismiss Complaint Against Eli Lilly.)

Additionally, it may be pertinent to inform the court that a petition to remove the executrix has been filed in the Hampshire County, MA, Probate Court and it has finally been submitted to that court. (This was alluded to in the motion for continuance.) We

are currently awaiting the judge's decision on this. If the executrix does get replaced the new executor may well be more willing than this one to take up the instant legal action.

**3) Regarding count 3 defendant argues that plaintiff did not plead and cannot prove substantially contemporaneous knowledge of the outrageous conduct of defendant Eli Lilly and that he is required to do so.**

In response I say that this makes no sense. I certainly had knowledge of the awful effects of the outrageous conduct of Eli Lilly (my father's suffering), which knowingly kept on selling a product which they knew tended to cause suicide in some cases. To argue that one must know not just the effects of the outrageous conduct but also the precise cause at the time that the effects are experienced would allow many manufacturers to sell defective products resulting in great suffering and death to consumers without their being sued by relatives who suffered emotional distress provided that the company could just keep their culpability hidden long enough for the deaths to transpire. For example, if a company decided to sell rat poison as a food seasoning but they were able to keep their culpability secret until some time after they had ceased producing their defective product and all consumers who were going to die had already died, then no one would be able to sue them for emotional distress since no one would have contemporaneous knowledge of their outrageous conduct (although many people would have had contemporaneous knowledge of the effects of the outrageous conduct). Thus defendant's reasoning leads to implausible conclusions and should be rejected.

Defendant also contends that its only possible outrageous conduct could have been in failure to warn physicians. The fact is, based upon my information and belief, that Lilly knew very well that Prozac causes suicidal tendencies in a substantial percentage of users and they continued to market the product and rake in billions of dollars while covering up their knowledge. This shows great disregard for the welfare of consumers of Prozac.

Defendant also tries to hide behind the claim that their products are certified by the FDA, claiming that this shows their products are safe. In response I note that (1) based upon my information and belief I assert that they failed to reveal important information to the FDA, and (2) the FDA itself has recently come out with a report asserting that Prozac may cause suicidal tendencies in children (see Exhibit C, FDA Report).

**4) Regarding count 4 Defendant asserts that Plaintiff must show that his emotional distress was the result of the allegedly negligent act of the defendant, as distinguished from the grief caused by the death of a loved one. Defendant further asserts that plaintiff "does not claim that he was at his father's house at the time his father died" or that plaintiff's emotional distress "was the result of Lilly's allegedly negligent act, as distinguished from the grief caused by the death of his father."**

In response I say that I was in frequent communication with my father in the weeks just prior to his death and I had never heard him so depressed as he was then. This caused emotional distress in me. Furthermore, this concept was included in the complaint. Paragraph 8.3 of the complaint states that Gregory Gillespie's severe depression in the weeks before he killed himself "…was evidenced in conversations he had with me…"

**5) The legal standard for a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) is a lenient standard which the plaintiff can overcome.**

3

The standard of review for assessing a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) is as follows:

> "Under Mass.R.Civ.P. 12(b)(6), 'a complaint *should not be dismissed* for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim.' ... 'Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor, are to be taken as true.'... '[A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate."

(Emphasis added.) Brum v. Town of Dartmouth, 44 Mass. App. Ct. 318, 321 (1998), quoting Nader v. Citron. 372 Mass. 96, 98 and 104 (1977), as quoted in New England Insulation Co. v. General Dynamics Corp., 26 Mass. App. Ct. 28, 29-30 (1988). This is an extremely lenient standard which the plaintiff can overcome. Brum, at 321.

**6) A motion for judgment on the pleadings is essentially the same as a motion to dismiss and therefore it presents the same lenient standard as that associated with the motion to dismiss discussed in section (5), just above, which the plaintiff can overcome.**

See Nolan, Massachusetts Practice Series, vol. 9, §303 ("The basis of the defendant's motion for judgment on the pleadings is the failure of the plaintiff to state a claim upon which relief can be granted. In effect, this is the same as a motion to dismiss on these grounds."); and see Smith & Zobel, Massachusetts Practice Series, vol. 6, §12.16 ("When made by a defendant, the motion is actually a motion to dismiss.") Thus, since a motion for judgment on the pleadings is essentially the same as a motion to dismiss, it should be reviewed along with the motion to dismiss according to the same lenient standard referenced in section (5), just above, which the plaintiff can overcome.

WHEREFORE for all of the above reasons Vincent Gillespie requests that the court deny defendant's motion to dismiss and for judgment on the pleadings.

Respectfully submitted,

*/s/ Vincent Gillespie*
VINCENT GILLESPIE
Pro Se
P. O. Box 741
Northampton, MA 01061
Tel No.: (413) 695-3637

# Exhibit A

Affidavit of Vincent Gillespie in Opposition to
Motion to Dismiss Complaint Against Eli Lilly

AFFIDAVIT OF VINCENT GILLESPIE
IN OPPOSITION TO MOTION TO DISMISS COMPLAINT AGAINST ELI LILLY

I, Vincent Gillespie, do hereby make oath and affirm the following:

**Regarding service of a summons:**

1. Before I served and filed my complaint against Eli Lilly for wrongful death of my father I spoke with Megan Greygorcewicz, a Hampshire County, MA, Superior Court Clerk, and asked her advice on proper procedure for serving and filing the complaint.

2. She told me that I could send the complaint to Eli Lilly, mailed with a return receipt, and then file the signed return receipt with the court. She also told me to file a certificate of service with the court and a civil case cover sheet and a copy of the compliant.

3. After I completed all of the above steps she reviewed my paperwork on file with the court and she told me that everything had been completed properly and that all I had to do at that point was to wait for the defendant to respond or fail to respond.

4. I then trusted her advice and relied upon it and waited for the defendant to respond before filing any other paperwork with the court.

5. After reading the defendant's answer to my complaint I did read that they said I had not served a summons but I assumed and believed that by this time, since the 90 days had expired, it was too late to file a summons.

**Regarding requesting the executrix to sue Eli Lilly, as required by M.G.L. 230 § 5:**

6. Peggy Roggenbuck Gillespie ("Peggy"), the executrix of Gregory Gillespie's estate, and I are not on speaking terms due to pending legal actions relating to my father's estate. I believe that under present circumstances it is very doubtful that Peggy would do anything merely because I asked her to unless it somehow benefited her.

7. I nonetheless inquired into the possibility of Peggy suing Eli Lilly by asking Tom Lesser, an attorney from Northampton, MA who knows both myself and Peggy, to contact her regarding this issue.

8. He called her and then told me that she had told him that she had previously considered suing Eli Lilly but had decided against it. I don't know the date of this call to Peggy but it was definitely before the complaint against Eli Lilly was filed by me (perhaps several months prior to the filing of the complaint).

SIGNED UNDER THE PENALTIES OF PERJURY,
THIS 23RD DAY OF DECEMBER, 2003.

_Vincent Gillespie_
VINCENT GILLESPIE

# Exhibit B

Cover Letter

Vincent Gillespie
P. O. Box 741
Northampton, MA 01061
413-659-3637

Legal Department
Eli Lilly and Company
Lilly Corporate Center
Indianapolis, Indiana 46285
Phone: 317-276-2000

July 8th, 2003

To Eli Lilly and Company:

    I am hereby serving you with the enclosed legal action on account of the death of my father by suicide. He was taking Prozac at the time. The complaint gives more details.

Sincerely,

*Vincent Gillespie*

Vincent Gillespie

# Exhibit C

FDA Report

# NewsMax.com
### America's News Page

October 28, 2003

Question:: Do You Support Rush Limbaugh?

▸ Home · Late-Night Jokes · Archives · Cartoons · News Alerts · U.S. News Links · Priority
▸ Int'l News Links · MoneyNews · Contact Us · NewsMax Store · Classifieds · Get Your Si



**Inside Cover**

- Reagan Library Spared in Fire
- ABC Reporter Chris Wallace Joins Fox News
- Blair's Staff 'Mystified' by Clinton's Fantasy
- 9/11 Commission Mum on Clinton Documents
- Tony Snow Heads to Fox Radio
- New York Times Fails to Buy Wall Street Journal
- Author: Schwarzenegger Worth $3 Billion
- Democrat Jon Corzine: Bush Tax Cut Helped Economy
- McAuliffe in Florida Vote-Count Flip-flop
- Matthews: Dem Primaries Won't Settle Presidential

## FDA Warns of Possible Suicide Risk With Children's Anti-depressants

*NewsMax.com Wires*
*Monday, Oct. 27, 2003*

WASHINGTON – Some anti-depressant drugs undergoing trials in children might be associated with suicides, the Food and Drug Administration said Monday.

The agency said reports in the press and medical journals describe suicide attempts and suicides in children receiving antidepressants. Many such reports also have been submitted to the FDA.

Though the data do not clearly establish an association between the use of the drugs on trials and increased suicidal thoughts or actions by pediatric patients, FDA said it was impossible to rule out an association.

Determining if the drug was at fault is a problem, as suicide attempts also occur in patients with depression who are untreated.

Nevertheless, the FDA said it was issuing a public health advisory to alert physicians to reports of suicidal thinking and suicide attempts in clinical studies of various anti-depressant drugs in pediatric patients.

Only Prozac is approved for use in major depressive disorder among children, but physicians sometimes use other drugs approved for adults.

The FDA said it has completed a preliminary review of reports for eight anti-depressant drugs - citalopram, fluoxetine, fluvoxamine, mirtazapine, nefazodone, paroxetine, sertraline, and venlafaxine - in tests in children.

In addition to the advisory, the agency scheduled a meeting in February of its Psychopharmacologic Drugs Advisory Committee and the Pediatric Subcommittee of the Anti-Infective Drugs Advisory Committee to discuss the question.

Put
Rud
Limb
Perr
Dems
Hirs
On S
Metc
Payt
de Bc
Ungra
Wey
'Buy
Smitl
Cao
Koch
Anti-
Farbe
Winr
Farro
Poro
O'Rei
In the
Morri
In the
Malki
In the
Falwi
Putn
Whe
Poe
LeBo
Frisa
Trulo
Robe
Kale
Glue
Nem
Malz
Alde
Bruc
Horo
Galla
Luco
Left
Liebr
Melrc
Limb

- Contest
- Kristol: Dem Establishment 'Terrified' by Dean
- More Inside Cover Stories


Click Here


Click Here


Click Here

**Outlawed for 41 Years-- Now Legal Again**

THIS INVESTMENT launched the largest family fortune the world has ever seen...

Click Here







© 2003 Associated Press. All Rights Reserved. This material may not be published, broadcast, rewritten or redistributed.

**Read more on this subject in related Hot Topics:**
Health Issues

**Back**

 E-mail this page to a friend       Printer Friendly Version

E-mail a Comment to NewsMax

**Reprint Information**

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December, 2003, a true and correct copy of PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS COMPLAINT was mailed via first class mail, postage prepaid thereon, to Michelle Mangrum, attorney for the defendant at the following address:

Michelle Mangrum,
Shook, Hardy & Bacon, L.L.P.
Hamilton Square
600 14th Street, N.W., Suite 800
Washington, D.C. 20005-2004

*Vincent Gillespie*
**VINCENT GILLESPIE**
Plaintiff, appearing in pro per