UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VINCENT GILLESPIE,               )
        Plaintiff    )
                     )
                     )
  v.                             ) Civil Action No. 03-30196-MAP
                     )
                     )
ELI LILLY AND COMPANY,     )
        Defendant   )


REPORT AND RECOMMENDATION REGARDING DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS (Document No. 11)
February 13, 2004

NEIMAN, U.S.M.J.

Vincent Gillespie ("Plaintiff"), proceeding pro se, brings this action against Eli Lilly and Company ("Defendant") for allegedly causing his father to commit suicide which, in turn, caused Plaintiff himself to suffer emotional distress. Defendant has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and the motion has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons indicated below, the court will recommend that Defendant's motion be allowed in all but one limited respect: the court believes that Plaintiff's claim for negligent infliction of emotional distress should be allowed to survive.

I. B<small>ACKGROUND</small>

The following facts are taken directly from the complaint:

    2. Plaintiff, Vincent Gillespie is the biological son of Gregory
    Gillespie [("Gillespie")] and a beneficiary and a legatee of
    [Gillespie's] Estate.

>    . . . .
>
>    4.  Defendant Eli Lilly manufactures Prozac, a prescription drug used to alleviate depression.
>
>    . . . .
>
>    6.  [Gillespie] was a very well known and renowned artist who died on April 26, 2000 by committing suicide.
>
>    7.  [Gillespie] . . . took Prozac by prescription for depression and unhappiness during two periods of time, once in 1997 and once in early 2000.
>
>    8.  It is known that Prozac can have adverse side effects. The second time [Gillespie] took it he displayed three typical symptoms of the adverse side effects of Prozac:
>
>    >    8.1  *Insomnia*: He became extremely depressed and he was unable to sleep; he had a sound machine (it created a choice of four soothing sounds to help one go to sleep).
>    >
>    >    8.2  *Anger*: In a suicide note he said that the suicide was probably the angriest thing he had ever done.
>    >
>    >    8.3  *Depression*: [H]e became exceedingly depressed in the weeks before he killed himself. This was evidenced in conversations he had with [Plaintiff] and also in a photo of himself contained in one of his most recent art pieces.

(Complaint ¶¶ 2-8). Plaintiff alleges that Defendant's breach of its duty of care toward his father was the proximate cause of his father's severe pain, suffering, and eventual suicide. (*Id*. ¶ 9). Plaintiff also alleges that Defendant's actions caused Plaintiff to suffer emotional distress himself. (*Id*.)

Plaintiff filed this action in state court on April 25, 2003. On August 8, 2003, Defendant removed the action to this court pursuant to 28 U.S.C. § 1441. Defendant noted in its removal papers that it had not been properly served, (Document No. 1 at 2 n.1), a fact Plaintiff acknowledges. In due course, Defendant answered the complaint and filed the instant motion for judgment on the pleadings, to which Plaintiff has filed an opposition.

## II. STANDARD OF REVIEW

Rule 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," as long as the motion does not delay the trial. In considering a Rule 12(c) motion, the court must accept the nonmoving party's facts as true, and it must draw reasonable inferences in his favor. *Feliciano v. State of Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998) (citation omitted). A court may grant a Rule 12(c) motion if it appears, beyond a doubt, that the nonmoving party can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Feliciano*, 160 F.3d at 788.

To be sure, the court must take special care when viewing a pro se litigant's submissions which, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nonetheless, pro se litigants, like all parties, are required to comply with the Federal Rules of Civil Procedure, *see Eagle Eye Fishing Corp. v. Dep't of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994), including the requirements of Rule 12(c).

III. DISCUSSION

The court will discuss Defendant's substantive arguments *seriatim*. First, however, the court addresses Defendant's threshold service-of-process argument.

A. SERVICE OF PROCESS

Defendant argues that it was never served with a summons as required under Fed. R. Civ. P. 4(c)(1) and, therefore, that the matter should be dismissed pursuant to Rule 4(m), if not the parallel Massachusetts rule.[1] The court, however, believes that Plaintiff should be given one last opportunity to perfect service.

In pertinent part, Rule 4(m) states that "if the plaintiff shows good cause for the failure [to properly serve defendant], the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The trial court has "substantial discretion" in determining whether a plaintiff has shown good cause for imperfect service. *United States v. Ayer*, 857 F.2d 881, 885 (1st Cir. 1988). Factors to consider include whether the delay in service was intentional or whether the defendant has suffered any cognizable prejudice by the delay. *See id.*

In this case, there is no evidence that Defendant has been prejudiced by the lack of

---

[1]In full, Rule 4(m) states as follows:

If service of the summons and complaint is not made upon defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*Compare* Mass. R. Civ. P. 4(j) (similar state rule, but providing 90 day service period). In both its removal papers and its answer, Defendant preserved its service of process claim.

4

service. Furthermore, Plaintiff states that, when he was first notified through the removal papers of his failure to properly serve Defendant, he did not then perfect service because, he believed, it was "too late to file a summons." (Plaintiff's Brief at 1.) Given these facts, combined with Plaintiff's pro se status, the court believes that dismissal for failure to perfect service is unwarranted. Therefore, to the extent the district court agrees with this court's recommendation that at least one count should survive (see *infra*), the court will further recommend that Plaintiff be given leave to immediately perfect service.

B. COUNTS I, II AND V

Plaintiff's wrongful death, conscious pain and suffering and loss of consortium claims (Counts I, II and V) all arise pursuant to the state's wrongful death statute, Mass. Gen. L. ch. 229 § 1 *et seq*. Under that statute, only the executor or administrator of an estate may bring such claims. *See* Mass. Gen. L. ch. 229, §§ 2 and 6; *Hallett v. Town of Wrentham*, 499 N.E.2d 1189, 1192-93 (Mass. 1986); *MacDonald v. Moore*, 263 N.E.2d 464, 465 (Mass. 1970). Plaintiff concedes, however, that he is neither, and that the executrix (his sister) is unwilling to pursue a wrongful death action. Since Plaintiff does not have standing to pursue Counts I, II and V, the court will recommend that these claims be dismissed.

C. COUNT III

In order to succeed on a claim for intentional infliction of emotional distress (Count III), a plaintiff must plead and prove four elements: (1) the defendant intended to inflict emotional distress on the plaintiff, or knew or should have known that emotional distress was the likely result of its conduct; (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized

society; (3) the defendant's actions were the cause of the plaintiff's emotional distress; and (4) the plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it.  *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318-19 (Mass. 1976).  Massachusetts law further requires a plaintiff to have "substantially contemporaneous knowledge of the outrageous conduct" in order to recover.  *Nancy P. v. D'Amato*, 517 N.E.2d 824, 828 (Mass. 1988).

In the court's view, Plaintiff's claim for intentional infliction of emotional distress fails in several ways.  For one thing, there is no evidence, and barely any allegation, that Defendant either intended to inflict emotional distress on Plaintiff or knew or should have known that emotional distress was the likely result of its conduct.  Even more fundamentally, Plaintiff does not allege "substantially contemporaneous knowledge," let alone identify the "extreme and outrageous" conduct upon which he bases his claim.  At best, the court might infer from the complaint that Plaintiff wishes to allege that Defendant wilfully or recklessly distributed a product, Prozac, it knew to cause harm, or failed to warn of the product's harm.  (See Complaint ¶ 9.)  Yet even those inferences are tenuous.

Under Massachusetts law, the manufacturer of a prescription drug generally has a duty to warn only the prescribing physician of risks associated with normal use of the product.  *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992).  The physician then acts as a learned intermediary between the patient and the drug manufacturer.  *Id.*  Accordingly, Defendant may have breached its duty to Plaintiff's father only if it knew or had reason to know that the normal use of Prozac may cause consumers to commit suicide and it failed to reveal this side effect to prescribing physicians.  *See id.  See also Nancy P.*, 517 N.E.2d at 827 (normally, Massachusetts courts allow recovery for intentional

infliction of emotional distress only when the offensive conduct was directed at the plaintiff). As for Plaintiff himself, however, he has cited no caselaw which would allow a close family member to recover from a drug manufacturer under an intentional infliction of emotional distress theory.

Granted, some courts have expressed a willingness to allow recovery for *reckless* infliction of emotional distress even though the conduct may not have been directly aimed at the plaintiff himself. *See id.* (stating that reckless infliction of emotional distress is appropriate if the defendant knew or should have known that emotional distress to plaintiff was the likely result of his conduct). The state's Supreme Judicial Court, however, has stressed that if a bystander were to so recover, he would need to show substantially contemporaneous knowledge of the conduct and that his distress was attributable to the defendant's conduct. *See id.* at 828. Plaintiff has not pleaded facts supportive of either proposition. Therefore, in the court's estimation, Count III should be dismissed.

D.  C̲O̲U̲N̲T̲ ̲I̲V̲

In order to succeed on a claim for the negligent infliction of emotional distress (Count IV), a plaintiff must prove five elements: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. *Payton v. Abbott Labs*, 437 N.E.2d 171, 181 (Mass. 1982). Family members of injured persons may recover for their own distress. *See Dziokonski v. Babineau*, 380 N.E.2d 1295, 1302 (Mass. 1978). In gauging the reach of such "bystander recovery," however, a court must consider the following: whether it was "reasonably foreseeable" that the bystander would be harmed; "where, when, and how" the third person's injury entered

7

into the bystander's consciousness; and the degree of "familial relationship."  *Cohen v. McDonnell Douglas Corp.*, 450 N.E.2d 581, 588 (Mass. 1983).

As Gillespie's child, Plaintiff easily meets the familial relationship requirement.  *See Ferriter v. Daniel O'Connell's Sons, Inc.,* 413 N.E.2d 690, 697 (Mass. 1980).  However, Plaintiff has not yet had the opportunity to demonstrate "where, when, and how" he received notice of the injury, other than his claim that he had "conversations . . . with" his father "in the weeks before he killed himself" and that, in those conversations, his father was "exceedingly depressed."  (Complaint ¶ 8.3.)   Nor has Plaintiff yet demonstrated how it would have been "reasonably foreseeable" that he would be harmed by Defendant's alleged failure to warn his father's doctor of Prozac's detrimental side-effects.

Despite these inadequacies, the court is mindful of the Federal Rules' liberal pleading requirements, *see* Fed. R. Civ. P. 8(a)(2); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), Plaintiff's pro se status, and the nascency of this case.  *See also Cohen*, 450 N.E.2d at 588 (explaining that, in some instances "the question [of bystander recovery] will be properly one for the trier of fact") (citation and internal quotation marks omitted).  The court also appreciates Plaintiff's allegation that his emotional distress -- "sorrow, worry, great stress, anguish and depression" (Complaint ¶ 26) -- is real and, apparently, legally cognizable.  *See Sullivan v. Boston Gas Co.*, 605 N.E.2d 805, 810 (Mass. 1993) (indicating that depression may constitute sufficient physical harm for a plaintiff to recover for the intentional infliction of emotional distress).  Accordingly, the court will recommend that Count IV survive, albeit by the thinnest of margins.

IV. CONCLUSION


For the reasons stated, the court recommends that Defendant's motion for judgment on the pleadings be DENIED with respect to Count IV, but otherwise ALLOWED. If this recommendation is accepted, the court further recommends that the case be DISMISSED unless Plaintiff can demonstrate, within 45 days thereafter, that service has been perfected.[2]

DATED:  February 13, 2004

  /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[2] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  See *Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  See also *Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.